1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON

9

10   CHRISTINE GRAVES,

11                     Plaintiff,              CASE NO. 2:16-cv-01261 BHS JRC

12        v.                                   REPORT AND RECOMMENDATION
                                               ON PLAINTIFF'S COMPLAINT
13
     NANCY A. BERRYHILL, Acting                Noting Date: April 7, 2017
14   Commissioner of the Social
     Security Administration,[1]
15
                      Defendant.
16

17        This matter has been referred to United States Magistrate Judge J. Richard

18   Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19   4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261,

20   271-72 (1976).  This matter has been fully briefed. *See* Dkt. 13, 14, 15.

21

22        [1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to
     Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting
23   Commissioner Carolyn W. Colvin as the defendant in this suit, pursuant to the last sentence of
     section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
24

1    Plaintiff was involved in a motor vehicle accident on June 24, 2011 when another

2    driver, who later was cited with inattention, drove into her lane. AR. 415. She hit her

3    head on the steering wheel, felt stunned, and took a few minutes to call her mother,

4    whose car she was driving. *Id*. Plaintiff developed a headache, and felt confused and

5    disoriented about an hour after the accident. *Id*. Plaintiff was diagnosed by an examining

6    neurologist, Dr. Stan Schiff, M.D. Ph.D., with a mild traumatic brain injury, with

7    posttraumatic migraine headaches, and strain and sprain injuries of her spine. AR. 417.

8    Subsequently, plaintiff attempted to return to part-time work, but developed major

9    depression with psychotic features and posttraumatic stress disorder ("PTSD").

10    Although in this instance the ALJ was required to discuss the opinions of

11    plaintiff's physicians, the ALJ failed to discuss the opinion from plaintiff's neurologist,

12    Dr. Schiff, along with another medical opinion from plaintiff's primary care physician.

13    This error is not harmless because, contrary to defendant's argument that the ALJ's

14    decision was consistent with the opinions of Dr. Schiff, Dr. Schiff initially opined that

15    plaintiff was limited to part-time work for six months, then, subsequently, opined that

16    plaintiff could not work at all, after she developed major depression with psychotic

17    features and PTSD, which resulted in a severe deterioration in her life function. *See* AR.

18    412-14, 417.

19    Therefore, this matter should be reversed and remanded to the Administration

20    pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with

21    this Report and Recommendation.

BACKGROUND

Plaintiff, CHRISTINE GRAVES, was born in 1963 and was 48 years old on the alleged date of disability onset of June 24, 2011. *See* AR. 240-41, 243-48. Plaintiff completed high school and has a 2-year certificate of completion, plus additional classes in computer science. AR. 41-42.  Plaintiff has work experience as a system analyst, insurance customer representative and patient service representative. AR. 41-45.  Her last job ended after she was in an automobile accident. AR. 54-55.

According to the ALJ, plaintiff has at least the severe impairments of "ovarian cancer, anxiety disorder/posttraumatic stress disorder, and depressive disorder (20 CFR 404.1520(c) and 416.920(c))." AR. 17.

At the time of the hearing, plaintiff was living in the apartment where she had lived for nineteen years. AR. 40.

PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration. *See* AR. 90, 91, 150, 151. Plaintiff's requested hearing was held before Administrative Law Judge Wayne N. Araki ("the ALJ") on May 24, 2014. *See* AR. 38-89. On November 24, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 12-37.

On June 8, 2016, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review. AR. 1-6. *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in August, 2016. *See* Dkt. 1. Defendant filed the sealed administrative record regarding this matter ("AR.") on October 31, 2016. *See* Dkt. 9.

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ erred when he failed to give any reasons for rejecting the opinions of Stan Schiff, M.D. and Robert Prongay, M.D.; and (2) Whether or not the ALJ erred at step two of the sequential evaluation process when he failed to find that plaintiff's knee impairment and peripheral neuropathy were severe impairments. *See* Dkt. 13, pp. 1-2.

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

**(1)    Whether or not the ALJ erred when he failed to give any reasons for rejecting the opinions of Stan Schiff, M.D. and Robert Prongay, M.D.**

Plaintiff contends that the ALJ erred by failing to discuss two medical opinions, one from plaintiff's neurologist, Dr. Stan Schiff, M.D., Ph.D., and one from Dr. Robert

Prongay, M.D., plaintiff's primary care provider. Dkt. 13, pp. 6-10. Defendant does not appear to dispute this contention, but instead argues that the ALJ's errors were harmless. Dkt. 14, pp. 5-7.

When an opinion from an examining or treating doctor is contradicted by other medical opinions, the treating or examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2).

After experiencing a motor vehicle accident, plaintiff began seeing neurologist Dr. Schiff, who diagnosed a mild traumatic brain injury with posttraumatic migraine headaches and strain and sprain injuries of her spine. AR. 417; *see also* AR. 415-18. Dr. Schiff initially opined in September 2011 -- three months after the alleged onset date -- that plaintiff was limited to part-time work for six months. AR. 417. In August, 2012, Dr. Schiff evaluated plaintiff again and noted that plaintiff had developed major depression with psychotic features and PTSD, following the stress of her return to part-time work, as diagnosed by Dr. Gail Gulisk Nelson, Ph.D. *See* AR. 412. Following his examination, Dr. Schiff opined that plaintiff suffered from severe deterioration in life function since he last had examined her in September, 2011, "secondary to post-traumatic stress due to injuries sustained in the motor vehicle accident of 6-24-2011, including most likely some degree of traumatic brain injury." *Id*. Dr. Schiff adopted the assessment of plaintiff's

1    psychologist and psychiatrist that she could not work at all at that time, adopting this

2    assessment into his treatment plan for plaintiff. AR. 413.

3        The ALJ failed to acknowledge or discuss the examinations and opinions of

4    plaintiff's neurologist, Dr. Schiff. Therefore, the ALJ erred by failing to provide a

5    specific and legitimate reason based on substantial evidence in the record as a whole for

6    failing to credit fully Dr. Schiff's opinions. *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53

7    F.3d at 1043); *see also* 20 C.F.R. §§ 404.1527(a)(2).

8        The ALJ also erred by failing to discuss Dr. Schiff's examination and opinions as

9    they constitute significant probative evidence regarding plaintiff's condition and

10   functional impairments. The Commissioner "may not reject 'significant probative

11   evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995)

12   (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v.*

13   *Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state

14   reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.  For example,

15   "an ALJ cannot in its decision totally ignore a treating doctor and his or her notes,

16   without even mentioning them." *Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir.

17   2015) (citing *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014)).

18       The Court also concludes that this error is not harmless as it is not

19   "inconsequential to the ultimate nondisability determination." *Stout v. Commissioner*,

20   *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006).

21       The Ninth Circuit has "recognized that harmless error principles apply in the

22   Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 6

1    (citing *Stout*, 454 F.3d at 1054 (collecting cases)).  Recently the Ninth Circuit reaffirmed

2    the explanation in *Stout* that "ALJ errors in social security are harmless if they are

3    'inconsequential to the ultimate nondisability determination' and that 'a reviewing court

4    cannot consider [an] error harmless unless it can confidently conclude that no reasonable

5    ALJ, when fully crediting the testimony, could have reached a different disability

6    determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout,* 454

7    F.3d at 1055-56). The court further indicated that "the more serious the ALJ's error, the

8    more difficult it should be to show the error was harmless." *Id.* at 1173 (noting that where

9    the ALJ did not even mention a doctor's opinion that plaintiff was "pretty much

10   nonfunctional," it could not "confidently conclude" that the error was harmless) (citing

11   *Stout,* 454 F.3d at 1056; *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 750 (6th Cir.

12   2007)). In *Marsh*, even though "the district court gave persuasive reasons to determine

13   harmlessness," the Ninth Circuit reversed and remanded for further administrative

14   proceedings, noting that "the decision on disability rests with the ALJ and the

15   Commissioner of the Social Security Administration in the first instance, not with a

16   district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

17          Defendant argues that the ALJ's decision was consistent with the opinions of Dr.

18   Schiff. Dkt. 14, pp. 5-6. However, the ALJ concluded that plaintiff was not disabled,

19   relying on a finding at step five that plaintiff was capable of other full-time competitive

20   work. *See* AR. 29-30. In contrast, three months after plaintiff's alleged date of disability

21   onset, Dr. Schiff opined based on his examination and evaluation that plaintiff was

22   limited to part-time work, and subsequently, opined that plaintiff could not work at all.

1  *See* AR. 412-14, 417. Therefore, the Court concludes that the ALJ's findings and

2  decision are not consistent with the opinions of Dr. Schiff. The Court furthermore

3  concludes that the error is not harmless because the Court cannot conclude with

4  confidence "that no reasonable ALJ, when fully crediting [Dr. Schiff's opinions], could

5  have reached a different disability determination." *Marsh*, 792 F.3d at 1173 (citing *Stout*,

6  454 F.3d at 1055-56).

7      Although defendant offers a reason as to why the ALJ potentially might have

8  rejected the opinions from Dr. Schiff, such reasons were not provided by the ALJ as

9  rationale for failing to credit fully Dr. Schiff's opinions and were not offered by the ALJ

10 with any apparent awareness of Dr. Schiff's examinations, evaluations and opinions.

11 According to the Ninth Circuit, "[l]ong-standing principles of administrative law require

12 us to review the ALJ's decision based on the reasoning and actual findings offered by the

13 ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have

14 been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing

15 *SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (other citation omitted)); *see also*

16 *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's

17 decision on a ground not actually relied on by the agency") (citing *Chenery Corp, supra*,

18 332 U.S. at 196).

19      The ALJ also erred by failing to discuss treatment records from plaintiff's primary

20 care provider, Dr. Prongay, M.D., who opined that plaintiff could not use either hand for

21 simple grasping, firm grasping, fine manipulation or keyboarding; and also could only

22 occasionally walk or stand, and never could lift more than 10 pounds. AR. 964, 966. This

is significant probative evidence from plaintiff's primary care provider that the ALJ erred

by failing to discuss. *See Flores,* 49 F.3d at 571; *see also Marsh*, 792 F.3d at 1172-73

(citing *Garrison,* 759 F.3d at 1012) ("an ALJ cannot in its decision totally ignore a

treating doctor and his or her notes, without even mentioning them").  This error, too, is

not harmless, as crediting these opinions would alter plaintiff's residual functional

capacity determination and likely would lead to a conclusion of disability. Therefore, this

error, too, should be corrected following remand of this matter.

> **(2)    Whether or not the ALJ erred at step two of the sequential evaluation process when he failed to find that plaintiff's knee impairment and peripheral neuropathy were severe impairments**

The Court already has concluded that the ALJ erred by failing to discuss two

significant medical opinions from plaintiff's neurologist and her primary care provider,

*see supra*, section 1. Therefore, for this reason and based on the record as a whole, the

Court concludes that following remand of this matter the ALJ should evaluate anew the

step two finding regarding severe impairments, following a complete review of all of the

medical evidence in the record.

## CONCLUSION

The ALJ erred by completely failing to discuss two medical opinions. These errors

are not harmless because the Court cannot conclude with confidence that no reasonable

ALJ, when fully crediting these opinions, could have reached a different disability

determination.

Based on these reasons, and the relevant record, the undersigned recommends that

this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

405(g) to the Acting Commissioner for further proceedings consistent with this Report and Recommendation. **JUDGMENT** should be for **plaintiff** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on April 7**,** 2017, as noted in the caption.

Dated this 17th day of March, 2017.

J. Richard Creatura
United States Magistrate Judge